UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TINA GHOLSTON, | CASE NO. 5:08CV1382 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Tina Gholston ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS the instant case for further proceedings consistent with this order:

**I.    PROCEDURAL HISTORY**

On December 29, 2003, Plaintiff filed an application for SSI. Tr. at 44-46. The SSA denied her claim initially and on reconsideration. *Id.* at 20-23, 27-30. On August 12, 2004, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.* at 31.

On January 17, 2006, an ALJ conducted a hearing where he received testimony from Plaintiff and Susan Moranda, a vocational expert. Tr. at 322-363. Plaintiff was represented by counsel. *Id.* On October 24, 2006, the ALJ issued a Notice of Decision – Unfavorable, finding that Plaintiff was not disabled. *Id.* at 9-17.

On June 7, 2008, Plaintiff filed the instant suit. ECF Dkt. #1. On November 10, 2008, Plaintiff filed a brief on the merits. ECF Dkt. #14. On December 10, 2008, Defendant filed a brief

on the merits. ECF Dkt. # 15.

**II.      SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ found that Plaintiff suffers from the following severe impairments: post gastric bypass surgery, post incisional hernia repair, lumbar degenerative disc disease, bilateral carpal tunnel syndrome post bilateral decompression, bilateral shoulder arthrosis and impingement, and bipolar disorder. Tr. at 13. The ALJ noted that Plaintiff underwent gastric bypass surgery in March of 2003, and treatment records indicate that the surgery was successful. *Id*. By February of 2004, Plaintiff's weight had decreased 256 pounds to 184 pounds. *Id*. The ALJ also noted that Plaintiff underwent a mesh surgical repair for a hernia in August of 2004. *Id*. The ALJ noted that there was no evidence of further treatment or complaints related to Plaintiff's gastric bypass surgery or hernia. *Id*.

The ALJ further supported his finding regarding Plaintiff's severe conditions with a discussion of her history of back and bilateral upper extremity complaints. Tr. at 13. The ALJ noted that a lumbar MRI from April of 2002 revealed degenerative changes at L2-L3 and L3-L4 with no evidence of disc herniation or nerve root compression. *Id*. The ALJ also noted that, aside from an acute episode of back pain in December of 2003, there is little mention of recent symptoms or signs of any back problems in the treatment records. *Id*. The ALJ noted, however, that Plaintiff has complained of bilateral hand pain and numbness, as well as shoulder pain. *Id*. He noted electrodiagnostic testing to be consistent with mild to moderate bilateral carpal tunnel syndrome. *Id*. In February of 2004, Plaintiff underwent bilateral carpal tunnel decompression surgery. *Id*. The ALJ noted that treatment records stated that Plaintiff's right wrist was doing great after the surgery, but she continued to have some left wrist complaints. *Id*. at 14. She was given some stretching exercises. *Id*. Turning to Plaintiff's shoulder pain, the ALJ noted that an x-ray showed AC arthrosis and signs of impingment, while treatment records indicated tenderness and a reduced range of motion in both shoulders. *Id*. The ALJ noted that Plaintiff treated with injections from March of 2004 through January of 2005, and surgery was advised. *Id*. Plaintiff, however, has not pursued any further treatment. *Id*. The ALJ noted that there is no evidence of any treatment for any impairment after January of 2005, and Plaintiff has testified that she has not treated with any doctor for over a

year.  *Id*.

The ALJ noted that Plaintiff had complaints of impairments other than those he found to be severe.  Tr. at 14.  Plaintiff had complaints of chest pain; however, the ALJ noted that extensive cardiac workups were within normal limits.  *Id*.  The ALJ noted that pulmonary function testis indicated some mild restrictive impairments, but Plaintiff testified that her complaints are controlled with an inhaler and she continues to smoke a pack of cigarettes a day.  *Id*.  The ALJ noted that Plaintiff has been diagnosed with type two diabetes mellitus, but treatment records following her gastric bypass surgery indicate that this condition is now controlled with diet.  *Id*.  Likewise, the ALJ noted that Plaintiff has been diagnosed with obstructive sleep apnea, but the condition appears to have been resolved by Plaintiff's weight loss and her use of a CPAP machine.  *Id*.  Accordingly, the ALJ found these impairments to be non-severe.  *Id*.

The ALJ then turned his attention to Plaintiff's mental impairments.  Tr. at 14.  He noted that Plaintiff underwent a psychiatric evaluation with Dr. B. Verma of Nova Behavioral Health in July of 2000, when she complained of depression, mood swings, temper tantrums, fear of crowds, withdrawal, crying spells, insomnia, poor concentration, and poor coping skills.  *Id*.  Dr. Verma diagnosed bipolar disorder with mild to moderate functional limitations and a GAF of 60.  *Id*.  The ALJ noted that there is no evidence of treatment for Plaintiff's mental complaints after 2004 and he noted that Plaintiff is not currently taking any psychotropic medications.  *Id*.  Plaintiff testified, however, that she visited with a therapist from Nova in November of 2005 and intends to pursue further care.  *Id*.  Based on this evidence, the ALJ found that Plaintiff's bipolar disorder was a severe impairment.

The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1.  Tr. at 15.

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently.  Tr. at 15.  He found that she can sit for about six hours in an eight-hour workday and stand and walk for about six hours in an eight-hour workday.  *Id*.  The ALJ found that Plaintiff is slightly limited in overhead reaching with both

arms and in fine and gross manipulation with both hands. *Id*. He stated that she must avoid exposure to temperature extremes. *Id*. He found slight limitations in her ability to perform simple, routine, and repetitive tasks. *Id*. He found that Plaintiff requires occasional supervision. Lastly in regard to Plaintiff's RFC, the ALJ found that Plaintiff experiences slight to moderate pain and requires occasional medication. *Id*.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's allegation that she could not work due to pain and mental problems. Tr. at 15. The ALJ noted Plaintiff's testimony that she is able to stand only for about two to three minutes, sit for about 20 to 30 minutes, and walk three blocks. *Id*. Plaintiff also testified that she was limited in overhead reaching and feeling. *Id*. The ALJ found that Plaintiff's impairments could be expected to produce the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms was not entirely credible. *Id*. The ALJ found that Plaintiff provided vague, unresponsive, evasive, and inconsistent testimony. *Id*. The ALJ noted that Plaintiff claimed that her husband financially supported her, but then she stated that he left her and no longer supported her. *Id*. Plaintiff stated that she did nothing but watch television twenty four hours a day, but then she stated that she cares for her two grandchildren. *Id*. Plaintiff lamented she was tired of living the way she was and needed help, but then stated that she has not sought medical treatment in over a year. *Id*. She mentioned that a counselor had contacted her for treatment in November of 2005, but she has not pursued this care. *Id*. The ALJ also noted that the objective medical evidence does not support Plaintiff's alleged level of limitations. *Id*. Specifically, the ALJ noted that there is no evidence that Plaintiff has pursued any medical treatment since January of 2005. *Id*.

The ALJ then addressed the medical opinions of record. Tr. at 15. The ALJ found the opinions of state agency medical consultants, who found mild to moderate mental functional limitations, to be credible as consistent with the record and supported by medical signs and laboratory findings. *Id*. The ALJ gave limited weight to an opinion from a family practitioner from December of 2003. *Id*. In that opinion, the doctor stated that Plaintiff was limited in pushing, pulling and lifting because of her shoulder pain and she was limited in prolonged standing, walking, and sitting because of discomfort. *Id*. The ALJ afforded this opinion limited weight because it

appeared to be based on Plaintiff's subjective complaints rather than objective signs and findings. *Id*. The ALJ further noted that Plaintiff's condition was reported to have improved following carpal tunnel syndrome decompression, which occurred after this statement. Tr. at 16. The ALJ stated this medical source statement is not inconsistent with the determined RFC. *Id*. Lastly in regard to RFC, the ALJ noted Plaintiff's treating psychiatrist's opinion that she had moderate functional limitations. *Id*. The ALJ found this opinion to be fully credible. *Id*.

The ALJ went on to find that jobs exist in significant numbers in the national economy that Plaintiff can perform. Tr. at 16. The ALJ reasoned that the vocational expert opined that a hypothetical person with Plaintiff's age, education, work experience, and residual functional capacity would be able to perform the requirements for the position of a stock clerk, a fast food worker, a hand packer, and a general office clerk. *Id*. at 17. Accordingly, the ALJ found Plaintiff not to be disabled. *Id*.

### III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.  ANALYSIS

### A.  Whether the ALJ erred in assessing Plaintiff's RFC

Plaintiff first contends that the ALJ erred in his determination of Plaintiff's RFC. ECF Dkt. #14 at 8. She asserts that the ALJ erred in finding that she experienced only slight limitations in the ability to reach overhead with both arms and in fine and gross manipulation and in relying upon her improvement following her carpal tunnel decompression, because the medical records indicate that she reported consistent complaints of hand pain, numbness, and tingling. ECF Dkt. #14 at 9. Plaintiff contends that there is "no evidence to contradict [her] statements that she continued to have difficulty to such a degree with her upper extremities." *Id*.

As a preliminary matter, Defendant contends that Plaintiff does not challenge the ALJ's credibility determination and thus waives that argument. ECF Dkt. #15 at 9. Defendant goes on to argue, however, that Plaintiff's argument regarding the extent of her limitations in her shoulders and hands "relies exclusively on her own allegations." *Id*. The Court fails to see how Defendant can support its waiver argument in light of its assertion that her argument regarding the extent of her limitations relies exclusively on her own allegations – credibility is necessarily a consideration. Further, Plaintiff clearly raised the issue by stating: "There is no evidence to contradict Ms. Gholston's statements that she continued to have difficulty to such a degree with her upper extremities." ECF Dkt. at #14 at 9. Lastly, Defendant addresses Plaintiff's credibility at length in its brief. *See* ECF Dkt. #14 at 9-10. Accordingly, the Court finds that the issue of Plaintiff's credibility has not been waived.

The Court finds, however, that the ALJ's assessment of Plaintiff's credibility was supported by substantial evidence. While it may be true that Plaintiff continued to complain of bilateral hand pain, numbness, and tingling, the Court sees no basis for disturbing the ALJ's finding that Plaintiff's level of care does not support her alleged level of limitation because there is no evidence that Plaintiff has pursued any medical treatment since January of 2005. *See* Tr. at 15; *see also Lawhorn v. Secretary of Health and Human Services,* 921 F.2d 276 (Table), 1990 WL 223033 at *3, (6th Cir. Dec. 27, 1990), unreported ("[T]he ALJ had an adequate basis to discount Mr. Lawhorn's credibility to a degree. His failure to seek treatment between April of 1982 and November of 1984 undercuts his allegations of disabling pain during that period."); *Hale v. Secretary of Health and Human Services*, 816 F.2d 1078 1082, (6th Cir. 1987) ("Given that plaintiff's benefits were terminated in 1982, . . . that plaintiff underwent no medical treatment from 1976 to 1982, it must be concluded that plaintiff's condition resulting from the 1976 trauma was no longer present by 1983."). Plaintiff does not challenge the ALJ's finding that she has not sought medical treatment since January of 2005. In fact, Plaintiff testified that she has not seen a medical doctor since January of 2005. *See* Tr. at 341.

As the Sixth Circuit has held, "[u]pon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has [had] the opportunity, which we do not, of observing a witness's demeanor while testifying." *Kidd v. Commissioner of Social Sec.*, 283 Fed.Appx. 336, 342 ( 6th Cir. 2008). Here, the ALJ set forth compelling reasons for discrediting Plaintiff's testimony. The ALJ's findings regarding the intensity, persistence, and limiting effects of her symptoms are supported by substantial evidence because the ALJ outlined several inconsistencies in her hearing testimony. The ALJ noted that Plaintiff claimed that her husband financially supported her, but then she stated that he left her and no longer supported her. Tr. at 15. Plaintiff stated that she did nothing but watch television twenty four hours a day, but then she stated that she cares for her two grandchildren. *Id.* Plaintiff lamented she was tired of living the way she was and needed help, but then stated that she has not sought medical treatment in over a year. *Id.* She mentioned a counselor had contacted her for treatment in November of 2005, but she has not pursued this care. *Id.*

Although Plaintiff contends that the medical evidence supports a finding of at least moderate limitations, she has directed the Court to medical records relying in large part on her self-assessment of the pain. *See* ECF Dkt. #14 at 9. While it is true, as Plaintiff contends, that some objective tests support complaints of bilateral hand pain and numbness,[1] the ALJ acknowledged that Plaintiff's impairment's "could reasonably be expected to produce the alleged symptoms". Tr. at 15. Therefore, Plaintiff's argument is misplaced. The ALJ simply found that Plaintiff's statements regarding the intensity, persistence and limiting effects were not entirely credible, and there is nothing in the medical records to refute that finding. Further, that testing (conducted 11/11/2003, 1/30/2004) predates Plaintiff's carpal tunnel decompression (2/26/2004) and the period in which the ALJ noted that Plaintiff did not seek medical care. *See* Tr. at 168, 169, 254, 258, 295. Plaintiff has not directed the Court to any medical records post-dating her carpal tunnel decompression

---

[1] Plaintiff does not clearly identify these tests, but it appears that she is referring to Phanel's and Tinels testing.

confirming her subjective complaints. The records upon which Plaintiff relies simply reiterate her subjective complaints. *See* ECF Dkt. #14 at 9 citing Tr. at 266, 267, 285. Therefore, the Court is left to consider the ALJ's treatment of Plaintiff's credibility on the issue. As discussed above, the ALJ acted within his discretion in discounting Plaintiff's credibility. Accordingly, the Court finds that Plaintiff's reliance on the medical records is not compelling, and her first ground for appeal is denied.

### B.  Whether the ALJ erred in his treatment of the treating physician's opinion

Next, Plaintiff contends that the ALJ erred in failing to grant substantial weight to the opinion of her treating physician. ECF Dkt. #14 at 10. Plaintiff points to Dr. Fratczak's opinion that she was limited in pushing, pulling, and lifting because of shoulder pain and could not perform prolonged standing, walking, and sitting due to discomfort. *Id*. at 11 citing. Tr. at 255. Plaintiff notes that the ALJ gave this statement limited weight because it was based upon subjective complaints rather than signs and findings. *Id*. citing Tr. at 15.

Plaintiff contends, however, that the medical records do support Dr. Fratczak's opinion. ECF Dkt. #14 at 11. Plaintiff reasons that MRI evidence, medical records, her complaints, clinical examinations, and x-rays support Dr. Fratczak's opinion. ECF Dkt. #14 at 11. Plaintiff also contends that Dr. Fratczak has a long standing treatment history with her and is in the best position to offer an opinion with respect to her limitations. *Id*. at 12.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id*.; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of

-9-

the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Defendant contends that Plaintiff's argument is misplaced because the ALJ noted that Dr. Fratczak's opinions were not inconsistent with the stated RFC. ECF Dkt. #15 at 11 citing Tr. at 16. Defendant further notes that Dr. Fratczak found that Plaintiff had a normal gait, no limitations in fine and gross manipulation, and no limitation of motion in her joints and/or spine. *Id.* Defendant asserts that Plaintiff has failed to establish that the RFC is inconsistent with Dr. Fratczak's opinion. *Id.* Defendant further contends that the ALJ correctly notes that Dr. Fratczak's opinion is not based upon clinical findings. *Id.* at 11-12. Defendant reasons that Dr. Fratczak opined that Plaintiff had back pain from disc herniation (Tr. at 252, 254), but his own notes and the MRI do not show a herniation. *Id.* citing Tr. at 249-250. Defendant contends that the only indication of disc herniation

-10-

comes from Plaintiff's unsupported self-report of herniation. *Id.* citing Tr. at 261.

Insofar as Dr. Fratczak opined that Plaintiff was limited in pushing, pulling, and lifting due to shoulder pain, the Court finds that any error by the ALJ in regard to his treatment of Dr. Fratczak's opinion is harmless. *See Daniels v. Commissioner of Social Sec.*, 152 Fed.Appx. 485, 491, 2005 WL 2739084(6th Cir. Oct. 24 2005), unreported (holding that an ALJ's failure to address an unclear treating physician's opinion constituted harmless error.). This portion of Dr. Fratczak's opinion is consistent with the stated RFC because Dr. Fratczak never quantified Plaintiff's purported limitations. Accordingly, the Court sees no basis for finding that the ALJ's limitation to occasional lifting and carrying 10 pounds frequently and 20 pounds occasionally is inconsistent with Dr. Fratczak's opinion.

Insofar as Dr. Fratczak opined that Plaintiff is limited from prolonged standing, walking, and sitting due to discomfort, the Court finds Plaintiff's arguments to be more compelling. The ALJ stated that he gave that statement limited weight as it appears to be based upon Plaintiff's subjective complaints rather than objective signs and findings. Tr. at 15. Dr. Fratczak diagnosed Plaintiff with lumbar sacral osteoarthritis with right ischiatic neuropathy. *Id.* at 263. He based that finding on a clinical exam which included a deep tendon reflex test and a finding of a "significant sensory deficit over the [right lower extremity] including proprioceptive sensation." *Id.* Dr. Fratczak further observed that Plaintiff's vibration sense was significantly diminished, which is consistent with neuropathy. *Id.* Dr. Fratczak reiterated his diagnosis in his evaluation for the SSA on January 26, 2004. *Id.* at 254. Dr. Fratczak stated that Plaintiff has right ischiatic radiculopathy causing difficulty walking and her ability to stand, walk, or sit for prolonged periods is limited due to discomfort. *Id.* at 254-255. Dr. Fratczak also supported his opinion with a clinical exam observation that Plaintiff had a decreased range of motion in Plaintiff's lumbar sacral spine on April 22, 2002 and November 11, 2003. *Id.* at 254, 258, 263. Contrary to the ALJ's finding, Dr. Fratczak's statement is supported by clinical findings. What is troubling is that the Dr. Fratczak set forth these findings in the Rehabilitations Services Commission's questionnaire's inquiry that specifically seeks all pertinent findings **on clinical examination** (*i.e.*, objective observations) related to Plaintiff's condition, yet the ALJ still somehow concluded that Dr. Fratczak's opinion was based

-11-

on Plaintiff's subjective complaints rather than objective signs and findings without ever addressing Dr. Fratczak's clinical examinations. *See* Tr. at 15, 254 (emphasis added).

Defendant contends that the ALJ appropriately rejected Dr. Fratczak's opinion that Plaintiff had back pain from a disc herniation because the MRI shows no disc herniation. ECF Dkt. #15 at 12. Defendant's argument is misplaced because Dr. Fratczak did not rely upon the MRI when asked to list the clinical findings supporting his opinion. Tr. at 252, 254. Further, Dr. Fratczak stated that Plaintiff's medical condition arises from a **past** work-related back injury with lumbar disc herniation; he did not state that she had a current disc herniation. Tr. at 254 (emphasis added). Therefore, the MRI is not necessarily inconsistent with Dr. Fratczak's opinion. Even so, the MRI could be construed to provide objective evidence in support of the limitations Dr. Fratczak imposed because it does not speak solely to the issue of herniation; it also indicates that Plaintiff has disc desiccation. *See* Tr. at 249.

Lastly, the Court must consider whether Dr. Fratczak's limitation on prolonged standing, walking, and sitting is inconsistent with the RFC, that is whether the ALJ's erroneous treatment of Dr. Fratczak's opinion was harmless. The Court finds that the RFC is incompatible with Dr. Fratczak's opinion because the ALJ found that Plaintiff could stand, walk, and sit for 6 hours out of an 8-hour workday. Tr. at 15. It is true that an ALJ is generally afforded a zone of choice in which he can act without the Court's interference. In other words, the substantial evidence standard "presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because the substantial evidence would have supported an opposite decision." *Blankenship*, 874 F.2d at 1120. Here, however, the ALJ's decision is not supported by substantial evidence because the finding that Plaintiff can sit, stand, and walk for six hours, is inconsistent with Dr. Fratczak's limitation on prolonged sitting, standing, and walking. Dr. Fratczak's opinion cannot be reasonably interpreted to support ALJ's conclusion that Plaintiff is able to sit, stand, and walk for 6 hours out of an 8-hour workday. In so finding, the Court acknowledges, that the term "prolonged," as Dr. Fratczak used it, is imprecise. Regardless, a reasonable mind would not find that a restriction from "prolonged" standing, walking, and sitting would allow Plaintiff to engage in those activities for 6

-12-

hours out of an 8-hour workday. Therefore, the ALJ's treatment of Dr. Fratczak's opinion insofar as it relates to prolonged sitting, standing, and walking cannot be considered harmless and remand is necessary.

This holding does not necessitate adoption of Dr. Fratczak's opinion on remand. The Court simply holds that the ALJ's reasons for rejecting Dr. Fratczak's opinion were inadequate because Dr. Fratczak did not wholly rely on Plaintiff's subjective complaints as the ALJ stated. Accordingly, it is necessary for the ALJ to reevaluate Dr. Fratczak's opinion and articulate his reasons for the level of deference he ultimately decides to afford it.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's appeal IN PART and GRANTS it IN PART. The instant case is REMANDED for further proceedings consistent with this order.

IT IS SO ORDERED.

DATE: February 23, 2009

*s/ George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE